No. 28,448.

August Witt, Jr., *Appellee*, v. The Spot Cash Insurance Company, *Appellant*.

(276 Pac. 804.)

Opinion filed May 4, 1929.

*C. A. Leinbach,* of Onaga, and *William N. Tice,* of Beloit, for the appellant.
*C. L. Kagey* and *L. M. Kagey,* both of Beloit, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover under an accident insurance policy for personal injuries. Plaintiff prevailed, and defendant appeals.

Issuance of the policy was admitted but liability denied because the accident was alleged to have been caused or contributed to by the manner in which defendant drove his automobile; that he attempted to turn a corner at a speed of thirty miles an hour which is in excess of the speed allowed by law. The policy contained this provision:

"The insurance under the accident and health provisions of this policy does not cover any loss caused or contributed to by riots, violation of law, disappearance, alcoholism, or self-inflicted injuries."

The plaintiff related substantially that he was driving from Cawker City at thirty miles an hour; that he did not know he was near the corner; that when he came over a hill and the lights were thrown down the slope he saw the corner; that he tried to slow down, but was too near the corner and a grader ditch; that he ran into the grader ditch with one front wheel and upset his car, and that it

turned over on its side. He wrote a letter to the defendant describing the accident as follows:

"Received your letter in regards to how fast I was going at the time of the accident. About thirty miles per hour. The deep grader ditch caused my car to turn over, and I was coming down grade and there was no road straight on, so it was turn or run straight in the four-foot bank. I thought I could save myself by turning a little, but it didn't."

Information as to the lay of the ground and the familiarity of plaintiff with the location was brought out on cross-examination:

"I left Rudolph Sheet's home between two and three o'clock . . . driving a Dodge car. I have lived in this county all my life . . . forty years old. I have been over this road at different times during the past twenty years. The hill is west of the corner, 100 yards from the corner, maybe 200 yards from the corner. It is slightly down hill from there to the corner. The road connects with a road running north and south. It does not go on east. The corner is rounded."

Section 1 of chapter 84 of the Laws of 1925 regulates the driving of motor vehicles on the public highway. A portion of that section reads:

"Upon approaching a railroad crossing or intersection of highways outside of any village or city, or turning corners, the person operating a motor vehicle shall reduce the speed of such vehicle to a rate not exceeding eight miles an hour, and shall not exceed such speed until entirely past such crossing or intersection."

In *Rowe v. United Com. Trav. Ass'n*, 186 Ia. 454, 172 N. W. 454, it was said substantially that a statute limiting the speed of automobiles on the highway is a law within the meaning of an accident insurance policy providing that its benefits shall not be extended to cover any death, disability or loss resulting from any violation of law. In the opinion it was said:

"The language of the insurance contract which appellant relies upon as affording it exemption from liability to the plaintiff is that 'the benefits under this article shall not extend to or cover any death, disability or loss resulting from the violation of any law.'

"The statute above quoted is a law within the meaning of the contract. It prescribes a duty for the violation of which a penalty is provided, and it follows of necessity from the agreement that, if Rowe violated this law, and his death 'resulted from' such violation, then there can be no recovery of benefits; and this, we hold, the jury should have been told." (p. 467.)

In that case the policy provided that the insurer would not be liable if the injury "was caused through violation of law and voluntary exposure to danger." The policy in the instant case reads "caused or contributed to."

The courts are in agreement that there must be some causative connection between the acts which constitute the violation of the law and the injury or death of the insured. If the acts constituting the violation of law have ceased before the injury, then it is not within the provision of the policy. (See note 17 A. L. R. 1005.)

In *Duran v. Insurance Company*, 63 Vt. 437, the insured was hunting on Sunday, which constituted a misdemeanor. The insured slipped on frozen ground and was injured. It was held the insurer was not liable because the insured was injured while violating a law. It was said in the opinion:

"R. L. 4316 prohibits hunting, shooting, pursuing, taking, or killing wild game, or other birds or animals, on Sunday. A person violating the provisions of these sections is to be fined. At the time of the accident the plaintiff was engaged in hunting. He had his gun with him and was ready to shoot any game he might see, whether in the field or along the highway on his way home. He started out to secure game wherever he might find it, and it does not appear that at the time of the accident he had abandoned his purpose. In hunting he was violating the law of this state. The traveling of the plaintiff was as much a part of his act of hunting as carrying his gun and ammunition or shooting or capturing game when the opportunity occurred in the course of the hunt. Without walking, the plaintiff could not have engaged in his hunt. Thus the accident was caused directly by plaintiff's violation of the law in hunting." (p. 439.)

In *Bloom et al. v. Franklin Life Insurance Company*, 97 Ind. 478, a similar provision was contained in a life insurance policy. The court said:

"While the unlawful act of the assured must tend in the natural line of causation to his death, in order to work a forfeiture it is not necessary that the act should be the direct cause, nor that the precise consequences which actually followed could have been foreseen. It is enough if the act is unlawful in itself, and the consequences flowing from it are such as might have been reasonably expected to happen, for in such a case the ultimate result is traced back to the original proximate cause." (p. 485.)

(See, also, *Lundholm v. Mystic Workers*, 164 Ill. App. 472; *Wells v. Insurance Co.*, 191 Pa. St. 207; and *Hatch v. Mutual Life Insurance Company*, 120 Mass. 550, cases where the insured died following criminal abortion and where recovery was denied.)

It has been held that driving an automobile at a rate of speed in excess of that fixed by the statute, being a misdemeanor, constitutes culpable negligence within the meaning of R. S. 21-420 (*State v. Bailey*, 107 Kan. 637, 193 Pac. 354), and for violating the speed laws one may be prosecuted. (*State v. Pfeifer*, 96 Kan. 791, 153 Pac. 552.)

In *Flannagan v. Provident Life & Accident Ins. Co.*, 22 F.(2d) 136, it was held:

"Insurance companies held not liable on accident insurance policies for death of insured, resulting from injuries sustained while driving automobile in intoxicated condition, in violation of Prohibition Law Va. (Acts 1924, c. 407), secs. 25, 80, under policy provisions excepting from coverage accidents encountered while violating the law." (Syl. ¶ 3.)

The policy issued by the company contained a provision that—

"This insurance does not cover . . . accidents encountered while insured is intoxicated or under the influence of intoxicants or narcotics, whether such condition contributed either directly or indirectly to the accident . . . accident encountered while violating law. . . .

"The law in the state of Virginia, where the deceased resided and where the accident happened, made it an offense to run an automobile while under the influence of intoxicants. . . .

"The deceased was running an automobile while intoxicated, within the meaning of the Virginia statute above cited, and in so doing was violating the Virginia law. This being true, under the conditions of the policies sued on, there was no resultant liability for his death." (pp. 137, 139.)

(See, also, *North Carolina Mut. Life Ins. Co. v. Evans*, 143 S. E. 449 [Ga.].)

Did plaintiff's excessive speed contribute to the accident? We think it did. One may safely turn a corner at eight miles per hour. As the speed increases the hazard increases. Plaintiff said: "I tried to slow down, and I was too near the corner and the grader ditch on the east side." That is to say, he was going so fast that he ran past the corner and into the ditch on the other side of the road. He was going so fast he could not turn. He had contracted to observe the rules regulating travel on the highway. He failed to observe one of those rules, and his injury followed directly on that failure. In driving up to the corner at a rate of thirty miles per hour he violated the statute. Such driving resulted in the accident. His excessive speed (in violation of the statute) caused his injury. Under the circumstances a demurrer to plaintiff's testimony should have been sustained.

The judgment is reversed and the cause remanded with instructions to enter judgment for the defendant.

Harvey, J., dissenting.