LEILLA M. AYRES, APPELLEE, V. ATLAS INSURANCE COMPANY, APPELLANT.

FILED MAY 20, 1932. No. 28110.

*Hamer & Tye, Jack W. Marer, Monsky, Katleman & Grodzinsky* and *Brome, Thomas & McGuire,* for appellant.

*Dryden & Dryden, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY and PAINE, JJ., and HORTH, District Judge.

DEAN, J.

Leilla M. Ayres began this action in the district court for Buffalo county against the Atlas Insurance Company to recover $1,000, pursuant to the terms of an accident insurance policy issued October 27, 1930, by the company to her brother, Walter Hugo Ayres, and wherein the plaintiff is named as the beneficiary. The plaintiff's brother died from the effects of injuries sustained in an automobile accident December 7, 1930. A jury was waived and the court, upon submission of the facts, entered a judgment in favor of the plaintiff and against the defendant company for $1,023, with interest at 7 per cent. per annum, and $200 as attorney's fees. The company has appealed.

The policy in suit is designated as the "Sterling Penny a Day Accident Policy," and by its terms insured a holder against death from bodily injuries occasioned by "external, violent, and accidental means, subject, however, to all the terms, provisions and limitations" contained in such policy. In the event of the death of the insured, the policy provided for the payment of $1,000 to the beneficiary named therein if the death was caused "by the wrecking or disablement of any automobile of the pleasure car type in which the insured is riding or driving, or is accidentally thrown from within such wrecked or disabled automobile."

The company contends, however, that the insured was driving the automobile in question at a speed of more than 45 miles an hour, in violation of the law, and that the plaintiff is therefore precluded from recovering under the policy. In respect of this feature, the policy provides that the "insurance does not cover any injury sustained by the insured * * * while violating the law," nor does it cover "any loss contributed to or caused by * * * exposure to unnecessary danger."

The plaintiff's argument on this feature, however, is that the insurance company is estopped from maintaining the defense here submitted, from the fact that the benefits outlined in the policy are printed in prominent type, while the exceptions are printed in ordinary type not easily discernible. Upon this feature, the court found and decreed that the policy was not printed in accordance with section 44-604, Comp. St. 1929, which provides that the exceptions in a policy must be given the same prominence as the benefits therein.

We have examined the policy in suit and, while it appears that the payments provided therein are paragraphed with prominent headings, and the exceptions not covered by the policy are printed in a single paragraph under the heading of "General Provisions," the same type appears to have been used practically throughout except in the headings. The form of the policy was approved

by the department of trade and commerce and it appears to be in substantial compliance with the statute.

In respect of the facts attending the accident, it appears that the plaintiff's brother rented a Chevrolet roadster, and that he was accompanied on the day in question by Elton and Dorman Bass, aged 17 and 19 years, respectively. These three boys left Kearney and drove to Gibbon, and it was upon the return trip to Kearney that the fatal accident occurred. Elton testified that he could not say how fast they were going, but he thought they were going about 50 miles an hour at the time, although he did not look at the speedometer. Elton also testified that the plaintiff's brother, upon the request of Dorman, "slowed down" because the car was weaving, and that they passed another car on the road, and he "brought it back in the road a little too quick and that made the back end go around of the car, and that started us going back and forth in the road and that was what tipped us over."

Elton several times testified that he did not look at the speedometer, and in response to a question as to whether it was difficult to tell the speed of a car without looking at the speedometer he conceded that such was the case. And he also testified that while the car in question was capable of going more than 45 miles an hour he did not know how fast they were going. Dorman Bass observed the speedometer and found that it indicated a speed of 60 or 65 miles an hour. But he also testified that a Chevrolet speedometer registers at a higher rate of speed than the car is actually making.

One, by whom the accident was witnessed as he was driving on the highway with his wife, testified that the car in question appeared to be going at about 50 or 60 miles an hour, and that it was weaving from side to side and that there was then a great deal of dust in the highway.

After the accident the plaintiff's brother was found lying near the car and blood was then coming from his mouth and nose and he was unable to speak and he died

shortly thereafter. The evidence clearly establishes the fact that his death was caused as a direct result of the accident.

An automobile mechanic testified on the part of the plaintiff that a Chevrolet is a light car, and that, the "heavier the car, naturally the less slippage it has under its wheels, and consequently the speedometer would be more accurate at higher rates of speed." His evidence tends to prove that the highway in question was not in good condition for a graveled road and that it was full of "chuck holes" at the place where the accident occurred. And he also testified that the condition of the road at the time in question here was such that it had a tendency to cause the car to jump, thereby causing the speedometer to register at a' higher rate of speed than the car was actually making at the time.

The county attorney testified that he interviewed the Bass brothers shortly after the accident, and that Elton stated to him that they had been driving at the rate of about 45 miles an hour at the time. And Elton, upon being recalled, admitted that he made this statement to the county attorney. Another, with whom the Bass boys returned to Gibbon after the accident, testified that Dorman Bass said they had been driving at the rate of 40 or 45 miles an hour at the time in question.

From the evidence it is disclosed that one of the tires on the car was deflated after the accident. Whether this occurred before the accident, thereby causing the weaving of the car and the subsequent results, or after the car turned over is not disclosed by the evidence. But it is clear that, had the deflation occurred during the time they were on the highway, this would have caused the weaving of the car and thereby caused the driver to lose control thereof. And as noted herein, the speedometer was inaccurate and registered at a higher rate of speed than the car actually was making. The evidence is conflicting, but the' trial court observed the witnesses and their demeanor while testifying, and in an action at law

tried to the court without a jury, where there is sufficient evidence in support thereof, the finding of the court has the same effect as the verdict of a jury and will not be disturbed on appeal unless clearly wrong. *Nebraska Nat. Bank v. Parsons,* 115 Neb. 770; *Bodge v. Skinner Packing Co.,* 118 Neb. 179.

We conclude that the judgment is right and it is

AFFIRMED.