# Richmond

## THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK V. C. DENNIS GRIMSLEY, EXECUTRIX, ETC.

March 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Chinn, JJ.

The opinion states the case.

*Frederick L. Allen* and *Christian & Barton,* for the plaintiff in error.

*Burnett Miller* and *John S. Barbour,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by Mrs. C. Dennis Grimsley, executrix of the last will and testament of Thomas E. Grimsley, deceased, to recover the sum of $2,000, the amount alleged to be due under a double indemnity provision of a policy of insurance issued to her late husband by the defendant.

The relevant provision of the policy, dated the 2nd day of February, 1922, bound the defendant to pay to the personal representative of the deceased the sum aforesaid, in the event "that such death resulted directly from bodily harm, * * * independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent and accidental means * * * provided, however, that this double indemnity shall not be payable * * * if such death * * * results from any violation of law by the insured * * * or directly or indirectly from bodily or mental infirmity or disease of any sort."

Thomas Edwin Grimsley, a prominent lawyer of Culpeper, Virginia, was at the date of his death fifty-eight and one-

half years of age. Never a robust man, in the year 1928 a medical examination disclosed that he was suffering from high blood pressure. During the interval between the year 1928 and his death, which occurred on February 3, 1930, he was under frequent observation by his attending physician. At times his blood pressure would rise, and then again, after rest and relaxation, it would decline. On the day before his death he informed his law partner that his blood pressure was down, and that he would conduct the trial of a case in the Circuit Court of Fauquier county the next day. Accordingly, on the morning of February 3, he drove his automobile from Culpeper to Warrenton, a distance of approximately twenty-eight miles, and did engage, in a most vigorous manner, in the trial of an important case. Apparently in his normal state of health, insured departed from Warrenton at approximately 4:30 p. m. for his home in Culpeper. The day was clear, and the hour of sunset on that day was 5:34 p. m. The insured was driving facing the sun, and was last seen alive at approximately 5:20 p. m.

The State highway from Warrenton to Culpeper is a hard surfaced road for a width of sixteen feet, with five-foot dirt shoulders on each side thereof. The point on the highway at which insured was last seen alive was at the end of a bridge across the Rappahannock river, which river separated the counties of Fauquier and Culpeper. When last observed he was driving his car in a proper manner, had stopped immediately behind a car bearing a Maryland license tag to permit the passage of a bus across the bridge. After the bus had passed, the two cars proceeded towards Culpeper, with the Maryland car in front. At a point about a mile and a half from the bridge, the car of insured was later seen by various travelers apparently wrecked by coming in contact with the left-hand abutment to a culvert crossing the highway at right angles. The approach to the culvert was practically level, and for a distance of 1,778 feet the road was practically straight. The inside edge of the

abutment, at the point of impact, was four feet and nine inches to the left of the left-hand edge of the hard surface. Approaching the culvert, for a distance of twenty-five feet, car tracks were observed, measuring 6.3 feet to the left of the hard surface on the dirt shoulder of the road.

The body of the insured, evidently precipitated into the stream below, was found the next morning several hundred yards below the culvert, under a fence. The subsequent autopsy revealed a blow on the left side of the head, and the five doctors who attended the autopsy testified that the blow received, with the accompanying shock and exposure, was sufficient to produce death.

The basic theory of the plaintiff is that the collision occurred by reason of the insured being blinded by the sun's rays or by being crowded off the road in an attempt to pass the Maryland car, and that the proximate cause of death was attributable to accidental means covered by the policy provision.

The defenses interposed were: 1. That the death of the insured did not result directly from bodily injury, independently and exclusively of all other causes, nor was such injury effected solely through external, violent and accidental means. 2. That death resulted directly or indirectly from bodily or mental infirmity of some sort. 3. That at and before the moment of impact insured became incapable, by reason of either physical or mental infirmity, of controlling the car. 4. That at the time the car collided with the abutment insured was driving the car upon the left hand side of the road, in violation of law, and that such violation, under the terms of the policy, exempted the defendant from liability.

There was a trial by a jury, which resulted in a verdict for the plaintiff. Upon motion of the defendant, the court set aside the verdict on the ground "that the court committed material error in the granting of instructions." Thereupon, the plaintiff moved the court to limit the issues

upon the new trial. The motion was sustained and this order was entered:

"The court having maturely considered the motion of the plaintiff submitted May 28, 1931, to limit the issues on the new trial of this cause, and the argument of counsel, and being of opinion to grant the same, doth order that the issue to be submitted to the jury on said new trial be limited to the question whether the death of the insured resulted from a violation of law by the insured within the meaning of the policy sued on, and for the purpose of said trial it shall be assumed that said death did not result directly or indirectly from bodily or mental infirmity or disease of any sort within the meaning of the policy sued on, to which action of the court the defendant excepted."

The verdict of the jury upon the second trial was in favor of the plaintiff and judgment was entered thereon.

It is assigned as error that the court erred on the first trial, when it set aside the verdict of the jury, in confining the issue upon the second trial to the sole question whether the death of the insured resulted from any violation of law by the insured within the meaning of the policy sued on.

■ The assignment of error is well founded. On the first trial the court gave this instruction:

"The court further instructs the jury that if they believe from the evidence that insured inadvertently and involuntarily drove his car upon the left hand side of the road, he may have been guilty of negligence, but was not guilty of violation of law in so doing."

Though of opinion that the motion of defendant to set aside the verdict, on the ground that it was contrary to the evidence, should be overruled, the court, of its own motion, did set aside the verdict on the ground that error of law was committed in giving the above instruction.

■ As a general rule a new trial, when granted, is awarded for the entire case; but there are exceptions. Unless prohibited by statute, a trial court, in awarding a new trial, may limit the issue to be tried on the new trial, when

manifest justice demands and it is clear that the course can be pursued without confusion, inconvenience or prejudice to the rights of any party. 14 Enc. Pl. & Pr. 937; 4 Minor's Inst. (2d ed.) 840-848. However, where all the issues are essential and each involves the merits of the controversy, the whole case must be opened.

In *Prunty* v. *Mitchell,* 30 Gratt. (71 Va.) 247, the facts stated in the syllabus are: "P brings *assumpsit* against M, who pleads *non-assumpsit,* on which issue is made up, and on the trial there is a verdict for P. M then asks for a new trial, and the court grants it on the condition that M shall pay the costs of the first trial, and agree that upon any future trial of the cause it shall be tried solely upon the issue already made up, without any additional plea; and to this M assents. The case is then sent to another court, and on the motion of M he is permitted to file another plea; to which P excepts. There is a judgment for M and a writ of error by P."

While the precise point involved in the case at bar was not involved in the *Prunty Case,* the following language of Judge Anderson is illuminating:

"The court is of opinion that the judge of the circuit court had the power, in the exercise of a sound discretion, to restrict the new trial to a particular issue, and consequently to the issue which had been made in the first trial, and to grant the new trial upon the conditions recited. Other terms than the payment of costs may be imposed on the party applying for a new trial. The new trial may be limited to a single point. Hilliard on New Trials, 2d edition, page 68, citing *Lainey* v. *Bradford,* 4 Rich. R. 1. The practice of granting a new trial after judgment as to part, and letting the judgment stand for the residue of the demand sued for, although sometimes questioned, is held to have been too long sanctioned now to be disturbed. *Ibid.,* citing *Edwards* v. *Lewis,* 18 Ala. 494. A new trial may be ordered upon a particular question without reopening the whole case. *Ibid.,* page 69, citing *Thwaites* v. *Sainsbury,*

7 Bing. R. 437, where the new trial was ordered, but upon conditions of payment of costs, bringing into court the sum claimed, and restricting the second trial to a single point.

"In Graham & Waterman on New Trials, Vol. 1, page 604, the author says: 'The terms imposed on setting aside verdicts, in addition to costs, may be divided into *ordinary* and *extraordinary*.' 'The extraordinary terms arise out of the merits of the case, the relative situation of the parties, the probable consequences of delay, the advantage or disadvantage which may result to either party from the state of the pleadings, the prejudice which may result to the prevailing party from opening the whole case;' these, and other considerations which he mentions, he says, 'all press upon the mind of the court, and call for salutary conditions to accompany the relief granted.' And he adds: 'To accomplish at the same time the claims of justice by sending the case to another jury, and protect the rights of the party in possession of the verdict, the courts will direct the requisite stipulations to be inserted in the rule.' After citing many cases in which conditions had been imposed, he says: 'It may be safely asserted that no case can occur presenting circumstances timely addressed to the discretion of the court, in which the rights of the parties may not be fully protected by the imposition of conditions meeting the exigency.' "

In our opinion the verdict of the jury on the first trial was rendered contrary to law, and the rights of defendant were so materially prejudiced that a trial *de novo* should have been awarded. This view is based upon two reasons: It was error as conceded by the trial court, to give the instruction quoted, and it was error to refuse, on motion of the defendant, to instruct the jury fully on defendant's theory of the case.

The defendant offered and the court refused to give this instruction:

"The court instructs the jury that if they believe from the evidence that Captain Grimsley's car took such a course

as it approached the concrete structure as to cause it to hit said structure, because he was suffering at that time from bodily or mental infirmity of some sort, then it is the duty of the jury to find in favor of the defendant."

The court should have modified the instruction by eliminating the words "of some sort," and, as thus modified, it should have been given. It merely presented the theory of the defendant as to why the car driven by insured took the course it did as it approached the culvert, and of the resulting collision.

Instruction "C," requested by defendant and refused, is as follows:

"The court instructs the jury that even if they believe from the evidence that the blow on Captain Grimsley's head caused his death, nevertheless if they further believe from the evidence that the sustaining of such a blow in the circumstances in which he did sustain it, would not have caused his death except for the fact that at the time, instead of being in good health, he was suffering from the disease of high blood pressure or from the disease of *arteriosclerosis*, then it is the duty of the jury to find in favor of the defendant."

It is the contention of plaintiff that Instruction "V," given by the court on its motion, sufficiently discharged the functions of "B" and "C."

Instruction "V" reads thus: "The court further instructs the jury that if they believe from a preponderance of the evidence that insured was in a state of disease from high blood pressure to such an extent that an attack of *angina pectoris* would reasonably be expected on his trip from Warrenton to Culpeper, and on said trip he had such an attack, and that death resulted either directly or indirectly from said attack, they must find for the defendant."

We are unable to concur in the contention. Instruction "V" confines the ailment resulting from alleged high blood pressure to *angina pectoris*, when it is a matter

of common knowledge that ailments other than *angina* result from high blood pressure.

It is further assigned as error that the court refused to give Instruction "F." This assignment is without merit. With Instructions "B" and "C" given, together with the other proper instructions heretofore given in the case, the jury, upon a new trial, will have been sufficiently instructed on that phase of the case.

There are other assignments of error dealing with the giving and refusing of instructions on the second trial of the case. As the questions here raised may not arise upon a new trial, we deem it unnecessary to discuss the further assignments of error.

The judgment of the trial court will be reversed, and the case remanded for a trial *de novo*.

*Reversed.*