SOCIETE TITANOR, APPELLEE, v. PAXTON & VIERLING IRON WORKS, APPELLANT.

FILED MARCH 16, 1933. No. 28363.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Finlayson, Burke & McKie* and *Gerald M. Drew, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

This is an action by Societe Titanor against the Paxton & Vierling Iron Works, in which plaintiff asks recovery of purchase price of a quantity of bar steel sold under written contract. The petition of plaintiff sets forth the written order, and alleged delivery of the steel, and alleges in paragraph 1 that plaintiff is a corporation organized and existing under the laws of France. The defendant in its answer denies paragraph 1 of the petition, and admits giving the order and that it duly received the steel, and alleged that the steel furnished by plaintiff could not be used in the manufacture of sound, usable tools, the purpose for which same was sold and purchased; that the defendant manufactured numerous tools from the steel in accordance with instructions furnished by plaintiff and the tools resulting from said process were not commercially usable, and on March 14, 1927, notified plaintiff it would not accept the steel. These allegations were denied in the reply.

The order is dated April 16, 1926, addressed to Messrs. Societe "Titanor," Paris, France, and so far as necessary to state reads: "Please ship us to our plant at Omaha, Neb., Three (3) bars Titanor steel of each of the following dimensions: Square 1½″ 1¾″ 2″ for cold sets. Price

—$.52 lb. To be delivered free of freight and duty to Omaha, Neb.," and is signed by Paxton & Vierling Iron Works. The plaintiff sent invoice June 30, 1926, which was received on July 22, 1926. The steel was delivered to the defendant about the first of August following. The heading on the invoice contained the words, in large type, "Societe 'Titanor,' French Titanor Corporation, Paris." No complaint was made by defendant until September 23, 1926, when defendant wrote to plaintiff, stating that defendant had been experimenting with the steel and had come to the conclusion that they did not know how to temper the steel, and stated, "unless you can give us a formula to temper this steel so it will hold up, we will have no further use for it."

There were several letters exchanged between the parties after that date, the defendant advising plaintiff that the defendant was unable to get satisfactory results from the steel, and in response to a request of defendant the plaintiff in October, 1926, sent instructions for the treatment of the steel as to manner of heating, forging and tempering. After that defendant wrote plaintiff, December 7, 1926, that the steel was not satisfactory, and in response to that plaintiff, on December 22, asked defendant to leave the affair in abeyance until one of plaintiff's officials, who would soon be there, could discuss the matter with defendant. On the 14th of March, 1927, defendant by mail notified plaintiff that the steel would not be accepted and was held subject to its order. The plaintiff wrote to defendant letters of date October 6, 1926, November 6, 1926, December 22, 1926, besides the invoice sent June 30. On the letter-head of each of these communications appeared in large type "Societe 'Titanor,' French Titanor Corporation," and the letters are signed by a "managing director." The defendant in a letter dated December 7, 1926, and in the letter of March 14, 1927, definitely rejecting the steel, addressed these letters to "Societe 'Titanor,' French Titanor Corporation, Paris, France."

After the parties had rested, in the trial to a jury both sides moved for a directed verdict. Whereupon the court discharged the jury and took the case under advisement. Later the court, with commendable zeal to get all available evidence, and by consent of parties, permitted the introduction of further testimony, and on final hearing rendered judgment for plaintiff for the full amount of its claim. Defendant appeals, alleging as errors: That the judgment is not sustained by sufficient evidence; that the judgment is contrary to law; and overruling its motion for judgment because the evidence failed to prove that plaintiff is a corporation.

The only evidence on the corporate character of plaintiff was given in a deposition of a witness in Paris, who stated "Societe Titanor is a societe organized and existing as such pursuant to the laws of the Republic of France." The defendant moved to strike out that part of the deposition, for the reason that it is a legal conclusion of the witness, and not the best evidence. The motion was overruled. Perhaps this motion should have been sustained, but no prejudice resulted, because, as we view the situation, the defendant was estopped to question the plaintiff's corporate character.

The evidence does not give a translation of the word "Societe," but the facts above set out show clearly that the defendant knew that plaintiff claimed to be a corporation. The invoice was so given, and defendant recognized plaintiff as a corporation and knew it was dealing with plaintiff as a corporation. Where a party contracts with a company and recognizes and deals with it as a corporation, he is estopped to deny its corporate existence after receiving the benefits of the contract. *American Gas Construction Co. v. Lisco*, 122 Neb. 607; Comp. St. 1929, sec. 24-221.

The appellant alleges that, as the steel was to be used for manufacturing cold sets, there was an implied warranty that the steel delivered was reasonably fit for that purpose. Comp. St. 1929, sec. 69-415. Cold sets, as ex-

plained by witnesses, mean cold chisels and some other tools for working cold iron. The appellant strongly urges that the judgment is not sustained by sufficient evidence and is contrary to the evidence, in that the evidence shows conclusively a breach of the implied warranty. Conceding that there was an implied contract that the steel was reasonably fit for the manufacture of cold sets, a reading of the testimony discloses that there were several witnesses called by both parties. Among them were experienced and skilled blacksmiths, iron workers, and there was also called on each side an expert metallurgist. Plaintiff's witnesses, including one metallurgist, testified that the steel was of good quality, superior to ordinary domestic steel, and that good cold sets could be made from same by ordinary methods, and that they had made such tools, which were offered in evidence. Defendant's witnesses, outside of the metallurgist, testified that they were employees of defendant and had repeatedly and by various methods tried to make cold sets from the steel, but were unable to get satisfactory or commercial products. The other metallurgist used what is called a pyrometer to control or gauge the heat in tempering, and with that method he could make satisfactory tools. That method is too expensive to use in practical production. But he further testified in substance that the workmen in defendant's plant might or might not be able to make commercially usable tools without using the pyrometer. He further testified that the steel was more sensitive than "we (meaning the Union Pacific Railroad Company, his employer) furnish our blacksmiths. It isn't fool proof." He further stated that the heat range of this steel is narrower than ordinary steel, having only about 20 degrees to work in, and he added: "Tool steels we attempt to use we want to be fool proof, and we ought to have as wide a range for quenching as possible." The effect of his testimony may be summarized as concluding that, while good tools could be made from the steel by use of pyrometer, the sensitive qualities and narrow heat range

render it doubtful, if not impractical, that the steel can be successfully used in the ordinary methods of manufacture. It is not unusual to have experts disagree. It will serve no useful purpose to set out the evidence of the parties more fully. In view of the whole record, it appears that, while the testimony is conflicting, there clearly is sufficient evidence to sustain the judgment.

The trial court observed the witnesses and their demeanor while testifying, and in an action at law tried to the court without a jury, where there is sufficient evidence in support thereof, the finding of the court has the same force as the verdict of a jury, and will not be disturbed on appeal unless clearly wrong. *Ayres v. Atlas Ins. Co.*, 123 Neb. 285.

The judgment is

AFFIRMED.