[No. 27670. Department Two. December 7, 1939.]

EFFIE M. VAN RIPER, *Respondent,* v. CONSTITUTIONAL GOVERNMENT LEAGUE, *Appellant.*[1]

[1]Reported in 96 P. (2d) 588.

*James Young* and *R. J. Fausett,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover judgment upon a death benefit certificate issued by defendant. The action was resisted upon the ground that the death of the decedent was caused by acts which were specifically excepted from the risks assumed in the certificate. Trial before the court without a jury resulted in findings, conclusions, and judgment in favor of plaintiff. Defendant has appealed.

Appellant, designating itself as a political, educational, benevolent, analytical, and non-profit corporation, was incorporated in this state under and by virtue of Rem. Rev. Stat., §§ 3872-3883 [P. C. §§ 4619-4630], inclusive. As a part of its regular business, it receives individual applications for registration with the corporation, and, in connection therewith, charges registration fees and also semi-annual dues.

For the purpose of assisting widows, orphans, and other persons dependent upon deceased registrants, it creates and maintains a number of death benefit funds which are financed and supported by registration fees, semi-annual dues for overhead expenses, and fixed contributions from each member of so-called "mutual benevolent" groups composed of not more than five hundred registrants. The purpose of the plan is to provide the benefits of life insurance to the registrants composing the groups, on a mutually co-operative basis. Upon the death of a registrant, his named beneficiary becomes entitled to an amount represented by the collection of one dollar from each contributing registrant within the particular group.

On January 25, 1936, appellant issued a certificate of registration to William Edmund Van Riper, a barber, residing at Pontiac, Michigan. Respondent was designated as his beneficiary. The certificate, which entitled the registrant to participate in two groups, has at all times since been in full force and effect.

This controversy grows out of the following provision of the certificate, the material part of which, so far as this action is concerned, appears in italics:

"It is agreed and understood that in the absence of fraud, the sum available under any Benevolent Group shall be incontestable and absolutely free from any conditions as to residence, travel, place or manner of death, *except* suicide or *death due to acts committed*

*in criminal violation of law,* including picketing, or the use of intoxicating liquor or narcotics." (Italics ours.)

Registrant William E. Van Riper met his death in an automobile accident in Michigan on the night of October 17, 1937. It appears from the evidence that, at about 6:30 p. m., Mr. Van Riper, accompanied by his wife and three daughters, was driving west along a graveled county road, approaching a paved arterial highway. The night had become dark and foggy, after a light rain earlier in the evening. A stop sign was posted at the edge of the graveled road about two hundred feet east of the arterial highway. Mr. Van Riper failed to heed the warning sign and drove into the intersection at an excessive rate of speed. In attempting to make a sharp turn to the left within the intersection, he lost control of his car, which skidded and collided with another car proceeding south along the arterial highway. As a result of the collision, Mr. Van Riper received injuries from which he died that night.

There was no proof of the traffic law of the state of Michigan, and, hence, it must be presumed to be the same as the traffic law of this state.

Assuming, then, as we must, that the relevant law of Michigan is the same as the Washington motor vehicle act (Laws of 1937, chapter 189, p. 835; Rem. Rev. Stat., Vol. 7A, §§ 6360-1 to 6360-154, inclusive), it is clear from the evidence that Mr. Van Riper violated a number of its provisions. By § 150 of the Washington law, p. 929 (Rem. Rev. Stat., Vol. 7A, § 6360-150 [P. C. § 2696-765]), the violation of any provision of the act constitutes a misdemeanor unless otherwise declared to be a felony or gross misdemeanor. It is not contended herein that the violations committed by Mr. Van Riper constituted more than mere misdemeanors.

Proceeding, then, from the premise that Mr. Van Riper was guilty of negligence which proximately caused his death, and that his violations of the statute constituted misdemeanors, we have for decision but one question, namely, whether his violations were "criminal" and fell within the exception of the provision quoted above.

■ While the certificate in question is not, strictly speaking, an insurance policy, it is similar to it in nature, and its provisions with reference to liability for death benefits are subject to the same rules as are applicable to analogous provisions in policies of insurance. 1 Couch, Cyclopedia of Insurance Law, 335, § 168; 2 Cooley's Briefs on Insurance (2d ed.), 971; 45 C. J. 21, 22, § 20.

■ The rule is well settled generally that a condition voiding a life insurance policy if the death of the insured is caused by, or is the direct result of, the violation of any law, is a valid enforceable provision. 6 Couch, Cyclopedia of Insurance Law, 4511 *et seq.*, § 1236; 6 Cooley's Briefs on Insurance (2d ed.), 5201 to 5215. Some of the cases recognizing that a traffic violation is a "violation of law" within the meaning of such an exemption clause in an insurance policy are the following: *Davilla v. Liberty Life Ins. Co.,* 114 Cal. App. 308, 299 Pac. 831; *Rowe v. United Commercial Travelers Ass'n,* 186 Iowa 454, 172 N. W. 454, 4 A. L. R. 1235; *Lamb v. Liberty Life Ins. Co.,* 129 Kan. 234, 282 Pac. 699; *Witt v. Spot Cash Ins. Co.,* 128 Kan. 155, 276 Pac. 804; *Ayres v. Atlas Ins. Co.,* 123 Neb. 285, 242 N. W. 604; *Mutual Life Ins. Co. v. Grimsley,* 160 Va. 325, 168 S. E. 329; *Flannagan v. Provident Life & Acc. Ins. Co.* (C. C. A.), 22 F. (2d) 136; *Provident Life & Acc. Ins. Co. v. Eaton* (C. C. A.), 84 F. (2d) 528.

■ However, the authorities just cited are not controlling of the question here, for the reason that the

exception in the certificate under consideration was not for "*a* violation of law," nor for "*any* violation of law," but for "acts committed in *criminal* violation of law." The appellant in this case chose to use the more restricted phrase in its certificate.

The question, then, is, whether the meaning of the conventional phrase "in violation of law," or its equivalent, as generally used, was changed by the insertion of the word "criminal" before the word "violation."

A crime is defined by Rem. Rev. Stat., § 2253 [P. C. § 8688], as an act or omission forbidden by law and punishable upon conviction by death, imprisonment, fine, or other penal discipline. Any violation of the traffic law referred to above is expressly made a misdemeanor at least, and is, therefore, in the technical, legal sense, a crime. In this case, however, we are concerned primarily with the interpretation of a phrase used in an insurance contract rather than with the law pertaining to crimes. This is an action arising upon contract; it is not a criminal action.

The language of an insurance policy is to be construed in its plain, ordinary, usual, and popular sense, unless by some known usage it has acquired a different and technical sense. 2 Cooley's Briefs on Insurance (2d ed.), 1004; 1 Couch, Cyclopedia of Insurance Law, 363, § 178; 32 C. J. 1150, § 261.

In *Dexter Horton Nat. Bank v. United States Fidelity & Guaranty Co.*, 149 Wash. 343, 270 Pac. 799, which was an action brought upon a fidelity bond, we used this language:

"It is true that the technical rules governing a criminal prosecution are not applicable to such a case as this. It is also true that in order to hold the surety upon such a bond as is here sued upon, the claimant need not produce testimony which satisfies the court or jury beyond a reasonable doubt of the truth of the facts upon which his claim is based, and that words

such as 'embezzlement' or 'forgery,' when contained in a bond like the one upon which this action is based, shall be deemed to have been used in their general and popular sense rather than with specific reference to some statutory definition. *Mitchell Grain & Supply Co. v. Maryland Casualty Co. of Baltimore,* 108 Kan. 379, 195 Pac. 978, 16 A. L. R. 1488."

The word "criminal" is defined in Webster's International Dictionary as:

"1. Involving, or of the nature of, a crime; as, *criminal* carelessness; 2. Relating to crime or its punishment, as, *criminal* action; 3. Guilty of crime or serious offense."

In the same work, one of the definitions of "crime" is:

"Gross violation of human law, in distinction from a misdemeanor or trespass, or other slight offense. Hence, also, any aggravated offense against morality."

Also:

"Crime is strictly a violation of law either human or divine; in present usage the term is commonly applied to grave offenses against the laws of the state."

Funk and Wagnall's New Dictionary defines "criminal" as follows:

"1. Relating to crime, or pertaining to the administration of penal as opposed to civil law; 2. Implying crime or heinous wickedness; of the nature of crime; as, criminal negligence; a criminal intent; 3. Guilty of crime; as, the criminal classes."

In the Oxford Dictionary, "criminal" is defined as:

"Of the nature of or involving a crime; more generally, of the nature of a grave offense, wicked."

We quote these standard lexicons because they give not only the technical, but also the popular, meaning of the word "criminal." In consulting such works, the layman would receive the impression, if he did not already have it, that the term "criminal" implies a

wicked or heinous act. To say that a layman, such as the registrant or the respondent, would apply the word "criminal" to the act of one who, under the circumstances here present, exceeded a speed limit or failed to stop before entering an arterial highway, is either to ignore the common usage of the term or else to imply that practically everyone who has ever driven an automobile is a criminal.

We believe that the word "criminal," as used in the certificate, was meant to signify an act done with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property. Certainly, none of these obliquities could be ascribed to Mr. Van Riper, who had in his charge, upon the particular occasion, his wife and daughters.

Even conceding, however, that the provisions of the certificate might also be construed to mean the same as "in violation of law," we are, nevertheless, of the opinion that our interpretation of the particular phrase is at least equally reasonable. Under such circumstances, that construction which is the more favorable to the assured in affording him protection under the policy will be adopted. *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 Pac. 585; *Dowell, Inc. v. United Pacific Casualty Ins. Co.*, 191 Wash. 666, 72 P. (2d) 296; *Sills v. Sorenson*, 192 Wash. 318, 73 P. (2d) 798.

In our opinion, the manner of Mr. Van Riper's death was not an excepted risk, within the meaning of the provision of the certificate.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.