**ALLSTATE INSURANCE COMPANY, Plaintiff–Appellee,**

**v.**

**Jerry Lee BROWN, Defendant–Appellant,**

**and**

**Frank Orbik Jr., Defendant.**

**No. 93–2304.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1993.

Decided Feb. 10, 1994.

---

John W. Hammel (argued), Yarling, Robinson, Hammel & Lamb, Indianapolis, IN, for plaintiff-appellee.

Max Howard (argued) and Mark Dudley, Anderson, IN, for defendant-appellant.

Before WOOD, ESCHBACH and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

On the morning of May 16, 1991, Frank Orbik Jr. ("Orbik") shot Jerry Lee Brown ("Brown"). Thereafter, Brown brought a personal injuries suit against Orbik in Indiana state court. Orbik notified his insurer, Allstate Insurance Company ("Allstate"), of the lawsuit and requested a defense and indemnification. Allstate then brought a declaratory judgment action in federal district court under diversity jurisdiction against both Orbik and Brown. Allstate maintained that Orbik's insurance policy did not provide coverage for the injuries Brown sustained after Orbik shot him and thus, Allstate had no duty to defend Orbik or indemnify him for any judgment Brown might obtain against

him. The district court agreed with Allstate and ordered summary judgment for Allstate. Brown appeals. We agree with the district court's reading of the Allstate policy's exclusionary provisions and affirm summary judgment for Allstate.

I.

A. *Background Facts*

On the morning of May 16, 1991, Orbik stopped to see his former girlfriend Ann Bumbalough ("Bumbalough") and their daughter Emily who were living in one of Orbik's rental houses in Anderson, Indiana. The previous day Orbik had asked Bumbalough to move out of the house because she had a new boyfriend, Jerry Brown. As was his usual habit, Orbik was carrying his .38 caliber Smith & Wesson revolver.

While Orbik was visiting, Brown arrived and entered the house. Displeased at seeing Orbik, Brown began calling him obscene names and threatening him. Orbik retreated behind a couch in a corner of the living room and Brown followed. Brown then either struck or touched Orbik on his shoulder as Orbik crouched in the corner of the room. When Brown touched him, Orbik pulled out his gun, turned, and pointed it at Brown who was about an arm's length away. Orbik then pulled the trigger and the pistol fired one shot, striking Brown in his upper abdomen or lower chest. While Orbik denies consciously pulling the trigger, he concedes that the pistol could not have spontaneously discharged and that in order for the pistol to discharge, he would have had to pull the trigger.[1]

As a result of the shooting, Brown was hospitalized and incurred approximately $32,000 in medical expenses. Orbik was arrested and eventually pled guilty to recklessly inflicting serious bodily harm while armed with a handgun, a Class D felony under Indiana law. Brown then sued Orbik for damages in Indiana state court. Contending that Orbik's actions were either accidental and negligent or in the alternative, intentional and reckless, Brown sought to recover damages for perma-

---

1. Orbik agreed that Brown did not hit his arm or the pistol causing the pistol to fire.

nent bodily injuries, pain and suffering, medical expenses, and loss of income.

Orbik notified Allstate of the suit against him and requested Allstate to provide a defense and coverage. At the time of the shooting, Orbik had a Landlords Package Policy with Allstate insuring the rental house at which the shooting took place. The policy provided two types of coverage relevant to Brown's claims against Orbik. The first, the Business Liability Protection, obligated Allstate to "pay all sums which an insured person becomes legally liable to pay as damages arising from the same loss because of bodily injury ... to which this coverage applies and which arises from the ownership, maintenance or use of the insured premises except as limited or excluded in this policy." The Business Liability Protection coverage contained the following exclusion limiting the scope of the policy's liability coverage:

**Losses We Do Not Cover**

1. We do not cover bodily injury, personal injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

The second type of coverage, the Premises Medical Protection, obligated Allstate to pay for certain enumerated medical services if a person's bodily injury arose "from an accident or occurrence for which an insured person is provided protection under the Business Liability Protection of this policy." The medical expense coverage was similarly limited:

**Losses We Do Not Cover**

1. We do not cover bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

B. *Declaratory Judgment Action*

When Allstate, an Illinois corporation with its principal place of business in Northbrook, Illinois, learned of Brown's action against Orbik, it filed suit against Orbik and Brown, both citizens of Indiana, in federal district court under diversity jurisdiction. 28 U.S.C. § 1332. Seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, Allstate asserted that its policy provided no coverage for Brown's bodily injuries or medical expenses and thus it had no duty to defend or indemnify its policyholder, Orbik.

The district court initially concluded that Orbik intentionally drew his pistol and pointed it at Brown with his finger on the trigger and that Brown's gunshot wound was a bodily injury which could reasonably be expected to result from Orbik's intentional acts. The district court also concluded Orbik acted criminally, as evidenced by his conviction for criminal recklessness, and that Brown's injuries could have reasonably been expected to result from Orbik's criminal acts. Therefore, the district court determined that both the intentional and criminal acts exceptions excluded Brown's claims from policy coverage and that under such exceptions, Orbik's subjective intent when he drew his pistol and pointed it at Brown was immaterial. The district court then concluded that there were no genuine issues of material fact and that Allstate was entitled to judgment as a matter of law. All parties agree that Indiana law governs the issues in this case. We review the grant of summary judgment *de novo* and have jurisdiction over Brown's appeal pursuant to 28 U.S.C. § 1291.

II.

Both exclusionary provisions in Allstate's policy deny coverage for bodily injury "which may reasonably be expected to result from the intentional or criminal acts of an insured person *or* which is in fact intended by an insured person." We note initially that the exclusion contains two parts, stated in the disjunctive. Policy coverage may be denied if the conditions of either part are satisfied.

The principal dispute here concerns the proper interpretation of the first part of the exclusionary provisions. Brown argues that the phrase "which may reasonably be expected to result from" requires an inquiry into the insured's subjective intent or expectation. Brown maintains that Orbik must have reasonably expected that his intentional or criminal actions would result in injury to Brown before the policy exclusion can apply.

Therefore, Brown contends that summary judgment was inappropriate because the record presented a genuine issue of fact regarding Orbik's subjective intent or expectation.

Allstate offers a markedly different reading of the phrase "which may reasonably be expected to result from." According to Allstate, the first part of the exclusion requires only an inquiry into the conduct of the insured and the subsequent injury. Once the insured's acts and the consequent bodily injury are established, they are evaluated under an objective standard. Under this standard, if a reasonable person would find that the injury suffered was a natural, probable or foreseeable consequence of the insured's conduct, then the first part of the exclusion applies and coverage is denied. The insured's subjective intent, expectation or belief is not material because it is not an element of the exclusion.

 Under Indiana law, if an insurance policy exclusion is susceptible to more than one reasonable interpretation, it is ambiguous and must be given the meaning most favorable to the insured. *See Freeman v. Commonwealth Life Ins. Co.*, 259 Ind. 237, 286 N.E.2d 396, 397 (1972). However, clear and unambiguous policy language must be given its plain meaning. *State Farm Fire & Cas. Co. v. Miles*, 730 F.Supp. 1462, 1465 (S.D.Ind.1990), *aff'd sub nom.*, 930 F.2d 25 (7th Cir.1991). To date, the Supreme Court of Indiana and the Court of Appeals of Indiana have not addressed the meaning of the particular language employed in the Allstate policy exclusions. However, at least one other federal district court in Indiana has examined the very same Allstate policy exclusion and found it to be unambiguous and to provide an objective standard. *Allstate Ins. Co. v. Barnett*, 816 F.Supp. 492, 496 (S.D.Ind.1993). The *Barnett* court opined that:

> In light of the case law from other jurisdictions, and Indiana law on insurance policy interpretation, it is this court's opinion that the Supreme Court of Indiana, if faced with the issue, would hold that the exclusion is clear and unambiguous and provides an objective standard. Under the objective standard, there is no coverage for

injuries that are the foreseeable consequence of the insured's intentional or criminal act.

We agree with the *Barnett* court. The factual predicate to the first part of the Allstate exclusion is the commission of either an intentional or a criminal act. An act is intentional if it is willfully or volitionally performed, *see Allstate Ins. Co. v. Herman*, 551 N.E.2d 844, 845 (Ind.1990), and an act is criminal if it violates the State's criminal code. *See Allstate Ins. Co. v. Carmer*, 794 F.Supp. 871, 873 (S.D.Ind.1991). Additionally, the exclusion requires bodily harm to be of a type "which may reasonably be expected to result from the intentional or criminal acts of the insured person." We do not agree with Brown's contention that this phrase injects a subjective element into the exclusion and requires a conscious desire or expectation to injure another. In our view, the words "reasonably expected" are intended to restrict or narrow the exclusionary clause's otherwise boundless applicability. The phrase is meant to ensure that the policy's exclusions apply only to those injuries most likely to result from the insured's intentional or criminal conduct. The exclusion is not intended to apply to remote, extraordinary or highly improbable consequences of an insured's intentional or criminal conduct.

In reaching this conclusion, we also emphasize that the part of the exclusion we have been discussing is but one of two exclusionary clauses stated in the disjunctive. Coverage under the Allstate policy is also barred when bodily injury is in fact intended by the insured. This second part of the exclusion requires a subjective or conscious desire by the insured to inflict bodily harm. If an insured acts with the intent to injure, he necessarily has the expectation that his actions will cause injury. Thus, were we to construe the former phrase "reasonably expected" to require a subjective expectation of harm on the part of the insured, the latter clause would be superfluous. Such an interpretation would violate the Indiana rule of interpretation requiring an exclusion to be interpreted so that effect is given to all parts of it. *See Gulf Ins. Co. v. Tilley*, 280 F.Supp.

60, 64 (N.D.Ind.1967), *aff'd,* 393 F.2d 119 (7th Cir.1968).

And finally we note that we are not the first jurisdiction to interpret the Allstate exclusion at issue here. Many other jurisdictions have addressed the meaning of the intentional or criminal acts exclusion and have found it unambiguous and providing an objective standard. *See Allstate Ins. Co. v. Cruse,* 734 F.Supp. 1574, 1581 (M.D.Fla.1989) (exclusion requires court to apply objective standard); *Allstate Ins. Co. v. Bailey,* 723 F.Supp. 665, 667 (M.D.Fla.1989); *Allstate Ins. Co. v. S.L.,* 704 F.Supp. 1059, 1060 (S.D.Fla.1989), *aff'd,* 896 F.2d 558 (11th Cir. 1990); *Allstate Ins. Co. v. Travers,* 703 F.Supp. 911, 915 (N.D.Fla.1988) (exclusion incorporates an objective test); *Allstate Ins. Co. v. Foster,* 693 F.Supp. 886, 888 (D.Nev. 1988) (exclusion is unambiguous and provides an objective standard); *Hooper v. Allstate Ins. Co.,* 571 So.2d 1001, 1002–03 (Ala.1990); *Allstate Ins. Co. v. Schmitt,* 238 N.J.Super. 619, 570 A.2d 488, 490–492 (App.Div.), *cert. denied,* 122 N.J. 395, 585 A.2d 394 (1990); and *Allstate Ins. Co. v. Sowers,* 97 Or.App. 658, 776 P.2d 1322, 1323 (1989).

### III.

 In sum, the district court's interpretation of the Allstate exclusion and its subsequent application of the exclusion to the facts were precisely correct. The district court applied an objective standard, looking to the predicate acts of Orbik and the resulting injuries to Brown and determining that Brown's injuries were the probable, direct and foreseeable consequence of the predicate acts. The court correctly concluded that Brown's gunshot wound was a direct and foreseeable consequence of Orbik's conduct. And because Orbik's conduct was both intentional and criminal, the district court concluded that coverage could be denied to Orbik on both grounds under the Allstate policy. We agree with the district court's analysis and its conclusions and thus, we AFFIRM summary judgment in favor of Allstate.