[No. 34984-8-I.   Division One.   January 16, 1996.]

ALLSTATE INSURANCE COMPANY, *Respondent*, v.
JAMES ROBERT PEASLEY, ET AL., *Appellants*.

*A. Stephen Anderson* and *Nelson, Anderson & Kratch-ick*, for appellants.

*Irene M. Hecht* and *Keller Rohrback*, for respondent.

BAKER, C.J. — Ardis Parker suffered injuries from a gunshot wound inflicted by James Peasley. As a result of this incident, Peasley eventually pleaded guilty to reckless endangerment and Parker brought an action for damages against Peasley. Peasley's homeowners insurance carrier, Allstate Insurance Company, brought this action for declaratory judgment, arguing that Parker's injuries are not covered by the insurance policy. The trial court granted summary judgment to Allstate, declaring that it is not obligated to defend or indemnify Peasley. We affirm, because Peasley's policy excludes coverage for injuries resulting from Peasley's criminal act.

I

Parker argues that Allstate's policy exclusion for "any bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts of an insured person" does not apply to "unintentional" criminal acts. Several jurisdictions have held that the phrase "criminal act" in this type of exclusion is not ambiguous, and refers

to any act from which a criminal conviction results.[1] Parker relies on *Van Riper v. Constitutional Gov't League*, 1 Wn.2d 635, 96 P.2d 588, 125 A.L.R. 1100 (1939), to argue that Washington law differs. In that case the court interpreted an exclusion for acts committed in "criminal violation of law." The court noted that insurance policies commonly excluded acts committed in "violation of law."[2] However, the addition of the modifier "criminal" to "violation of law" was obviously intended to change the meaning of the phrase in the policy at issue. After looking to common dictionary definitions for guidance, the court determined that "criminal" in the context of the particular exclusion meant something intentionally done for the purpose of causing harm.[3]

██ It is not clear that the *Van Riper* court's analysis would lead to coverage in the instant case, because that court referenced criminal negligence as one of the usual meanings for the word "criminal." As noted, Peasley pleaded guilty to reckless endangerment. In any event, the definition given to "criminal" as a modifier for "violation of law" in *Van Riper* cannot be given to "criminal" in the policy exclusion at issue here. The exclusion in Allstate's policy applies to both criminal and intentional acts. It also separately applies to harm intentionally inflicted. If "criminal" meant only intentional criminal acts, then the exclusion would only need to refer to intentional acts. In order to give meaning to all parts of

---

[1]*See, e.g., Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001, 1003 (Ala. 1990) (citing cases from several other jurisdictions with similar holdings); *see also Tower Ins. Co. v. Judge*, 840 F. Supp. 679, 691 (D. Minn. 1993) (holding that an exclusion for criminal acts applies to criminal acts, whether intentional or not). *But see Young v. Brown*, 658 So. 2d 750 (La. App.) (holding that the exclusion is ambiguous and only applies to intentional criminal acts), *cert. denied*, 662 So. 2d 1 (1995).

[2]*Van Riper*, 1 Wn.2d at 639-40.

[3]*See Van Riper*, 1 Wn.2d at 642.

the exclusion,[4] "criminal act" in this context cannot be narrowly construed to include only intentional violations of law. We hold that "criminal act" in this context means an act for which a criminal conviction may result. Therefore, the exclusion applies to Parker's act of reckless endangerment.[5]

## II

■ Parker next argues, relying on two New York cases,[6] that the insured must have a reasonable expectation that harm will result from his or her acts in order for the exclusion to apply. Both of those cases applied a subjective standard to the determination of whether injury may reasonably be expected to result from the acts of the insured. However, both cases ignore the language in the latter part of the exclusion, which applies to the insured's acts which are intended to inflict harm. As the court reasoned in *Allstate Ins. Co. v. Brown*,[7] if the criminal or intentional acts referred to in the first part of the exclusion required a subjective awareness on the part of the insured that they were likely to cause harm, the latter part of the exclusion would be superfluous. This is because an act intended to cause harm necessarily involves an expectation that the harm will result.[8] Applying the Indiana rule that exclusions must be interpreted in a manner which gives effect to all parts, the court determined that an objective stan-

---

[4]*See Hess v. North Pac. Ins. Co.*, 122 Wn.2d 180, 186, 859 P.2d 586 (1993) (describing rules for interpreting unambiguous policy provisions).

[5]Parker also argues that Peasley's guilty plea to reckless endangerment is not determinative of whether he committed the act with criminal intent. Because "criminal act" under the policy cannot be read as requiring intent, this argument is superfluous.

[6]*Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 571 N.Y.S.2d 429, 574 N.E.2d 1035, 1038 (1991); *Green v. Allstate Ins. Co.*, 177 A.D.2d 871, 576 N.Y.S.2d 639, 640 (1991) (summarily following *Zuk*).

[7]16 F.3d 222 (7th Cir. 1994).

[8]*Brown*, 16 F.3d at 225.

dard applied.[9] Applying the similar rule of interpretation in Washington,[10] in order to give meaning to all of the language in the exclusion, an objective standard must apply to the determination of whether harm may reasonably be expected to result. Further, the plain language of the phrase connotes an objective standard; "may reasonably be expected to result" does not indicate an actor.

In her reply brief Parker cites *Tower Insurance* as an endorsement of the reasoning in *Zuk*. *Tower Insurance* involved a criminal acts exclusion that was not modified by the "may reasonably be expected" language.[11] The court held that the clause was unambiguous and applied to all criminal acts, intentional or unintentional.[12] Nevertheless, the court applied a Minnesota rule of construction that policies will be interpreted based on the reasonable expectations of the insured. The court reasoned, citing *Zuk*, that insureds would expect to be covered for unexpected injuries that result from their criminal acts.[13] The court's reasoning in *Tower Insurance* is not applicable in this case for two reasons. First, it does not construe the same policy language. Second, in Washington unambiguous exclusions must be given the effect of their plain language. Only ambiguous terms will be construed narrowly against the insurer.[14]

Applying the objective standard to Peasley's act, it is clear that the harm to Parker could reasonably be

---

[9]*Brown*, 16 F.3d at 225; *see also Brown*, 16 F.3d at 226 (citing cases from several other jurisdictions with similar holdings).

[10]*See Hess*, 122 Wn.2d at 186.

[11]*See Tower Ins. Co.*, 840 F. Supp. at 693.

[12]*Tower Ins. Co.*, 840 F. Supp. at 691.

[13]*Tower Ins. Co.*, 840 F. Supp. at 692-93.

[14]*See, e.g., State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 484-85, 687 P.2d 1139 (1984) (rejecting appellant's invitation to apply the "reasonable expectation doctrine").

expected to result. This factor is an element of the crime for which he was charged, and the pith of his guilty plea.

## III

Finally, Parker argues that an exclusion for unintentional criminal acts violates public policy. Several courts have rejected this argument.[15] Even the Washington Supreme Court case relied on by Parker for her interpretation of "criminal act" noted that an exclusion in a life insurance policy for death caused by the violation of any law is a valid, enforceable provision.[16]

■ We must be "hesitant to invoke public policy to limit or avoid express contract terms absent legislative action."[17] Rejecting an insured's argument that the family exclusion in a homeowners policy violated public policy, the Supreme Court has distinguished public policy in the area of automobile insurance. Public policy in favor of coverage is evidenced in the area of automobile insurance by legislation, including the underinsured motorist statute.[18] No legislation has expressed public policy against similar exclusions in homeowners insurance coverage.[19] Absent any evidence of a public policy against this type of exclusion, we decline to declare one. We note that this policy exclusion does not necessarily leave the injured unprotected; it leaves the insured unprotected from the execution of a judgment against him.

Affirmed.

---

[15]See, e.g., Allstate Ins. Co. v. Norris, 795 F. Supp. 272, 276 (S.D. Ind. 1992) (citing cases from several jurisdictions).

[16]Van Riper, 1 Wn.2d at 639.

[17]Emerson, 102 Wn.2d at 481.

[18]Emerson, 102 Wn.2d at 482.

[19]See Emerson, 102 Wn.2d at 483. Cf. American Home Assurance Co. v. Cohen, 124 Wn.2d 865, 874-75, 881 P.2d 1001 (1994) (finding no legislative evidence of public policy against exclusions from coverage for injuries to patients caused by psychologists' sexual misconduct).

COLEMAN and Cox, JJ., concur.

Review granted at 129 Wn.2d 1013 (1996).