932 P.2d 1244 (1997)
131 Wash.2d 420
ALLSTATE INSURANCE COMPANY, a foreign corporation, Respondent,
v.
James Robert PEASLEY, a single person, Defendant,
Ardis Jeanne Parker, a single person, Petitioner.
No. 63869-1.
Supreme Court of Washington, En Banc.
Argued October 9, 1996.
Decided March 20, 1997.
*1246 Stephen Anderson, Seattle, for petitioner.
Keller, Rohrback, Irene Hecht, Seattle, for respondent.
Harbaugh & Bloom, Gray N. Bloom, Spokane, Debra Stephens, Spokane, Bryan P. Harnetiaux, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
*1245 DOLLIVER, Justice.
An insurance company asks for a declaration that a criminal acts exclusion in its homeowner's insurance policy precludes insurance coverage to a guest who was shot by the homeowner, when the shooting constituted the crime of reckless endangerment. We find the criminal acts exclusion applies to the facts of this case.
While a guest in James Peasley's house, Ardis Parker was shot in the stomach by James Peasley. Parker sustained serious but nonfatal injuries. Both Peasley and Parker maintain the shooting was accidental.
After reviewing the facts surrounding the shooting and interviewing Peasley's neighbors who had heard a loud argument from Peasley's house at the time of the shooting, the local prosecutor charged Peasley with second degree assault. Peasley was tried and convicted, but the Court of Appeals reversed the conviction because of an erroneous jury instruction. State v. Peasley, 71 Wash.App. 1055 (1993). Peasley then bargained with the prosecutor and pleaded guilty to second degree reckless endangerment in exchange for the prosecutor's recommendation of a suspended sentence.
Ardis Parker sued Peasley for damages arising from her injuries. Peasley was insured by Allstate Insurance Company (Allstate). When Allstate learned of Parker's lawsuit, Allstate brought this summary judgment against both Peasley and Parker seeking a declaration that a criminal acts exclusion in the Peasley's homeowner's insurance policy (Policy) excluded coverage for Parker's injuries because they were the result of Peasley's criminal acts. The trial court granted summary judgment for Allstate, and the Court of Appeals affirmed. Allstate Ins. Co. v. Peasley, 80 Wash.App. 565, 910 P.2d 483, review granted, 129 Wash.2d 1013, 917 P.2d 576 (1996). We also affirm.

I
Summary judgment in this case is appropriate because the interpretation of language in an insurance policy is a matter of law. Rones v. Safeco Ins. Co. of Am., 119 Wash.2d 650, 654, 835 P.2d 1036 (1992). The insurance contract must be viewed in its entirety; a phrase cannot be interpreted in isolation. Hess v. North Pac. Ins. Co., 122 Wash.2d 180, 186, 859 P.2d 586 (1993). When construing the policy, the court should attempt to give effect to each provision in the policy. Kish v. Insurance Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994).
Peasley thinks the criminal acts exclusion clause is ambiguous. "An ambiguity exists only `if the language on its face is fairly susceptible to two different but reasonable interpretations'." Kish, 125 Wash.2d at 171, 883 P.2d 308 (quoting Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1, 112 Wash.2d 1, 11, 771 P.2d 701 (1989)). If an ambiguity is found in an exclusionary clause, the ambiguity is strictly construed against the insurer. Kish, 125 Wash.2d at 170, 883 P.2d 308 (citing Rodriguez v. Williams, 107 Wash.2d 381, 384, 729 P.2d 627 (1986)). If, however, the language in an insurance policy is clear and unambiguous, the court must enforce it as written and cannot modify the contract or create ambiguity where none exists. Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys., 111 Wash.2d 452, 456, 760 P.2d 337 (1988).
When analyzing an insurance policy and questioning whether an ambiguity exists, we look at the language according to the way it would be read by the average insurance *1247 purchaser. State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 480, 687 P.2d 1139 (1984). Terms undefined by the insurance contract should be given their ordinary and common meaning, not their technical, legal meaning. Kish, 125 Wash.2d at 170, 883 P.2d 308.
With these rules in mind, we must look to the exclusion at issue in Peasley's Policy:
Losses We Do Not Cover:
1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.
Clerk's Papers at 23. Peasley claims the phrase "criminal acts" is ambiguous. He acknowledges Allstate's reading of the phrase, but he argues a reasonable person could understand the phrase as denoting only intentional crimes. If the phrase is subject to more than one reasonable interpretation, the interpretation most favorable to the insured will be applied. If the phrase is unambiguous on its face, then it must be applied as written. The Court of Appeals held the phrase clearly and unambiguously includes both intentional and unintentional criminal acts. Allstate, 80 Wash.App. at 568, 910 P.2d 483.
Before addressing Peasley's claim of ambiguity, we must break down the exclusion clause. Because the disjunctive conjunction "or" separates "intentional" from "criminal," we can break the clause down into the following order:
Allstate does not cover
A. any bodily injury which may reasonably be expected to result from the
1. intentional acts of an insured person, or
2. criminal acts of an insured person, or
B. injuries which are in fact intended by an insured.
See Hooper v. Allstate Ins. Co., 571 So.2d 1001, 1002-03 (Ala.1990) (outlining the same exclusion in a similar fashion). As used in the clause, the word "intentional" clearly denotes its own category of actsacts which are intentional, whether or not they are criminal. Likewise, the word "criminal" denotes its own category of actsacts which are criminal, presumably whether or not they are intentional. We say presumably because Peasley claims the phrase criminal acts can be read by the ordinary person as denoting only intentional criminal acts.
Since Peasley's Policy appears to leave the phrase "criminal acts" undefined, we turn to the dictionary to determine the common meaning of the words. Boeing Co. v. Aetna Casualty & Surety Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990); see also Kish, 125 Wash.2d at 171, 883 P.2d 308 (looking to the dictionary to define "flood" as used in an exclusionary clause). The definitions for the adjective "criminal" include the following:
1: involving or being a crime 2: relating to crime or its punishmentdistinguished from civil 3: guilty of crime or serious offense 4a: REPREHENSIBLE, BLAMEWORTHY, DISGRACEFUL b: EXCESSIVE, EXTORTIONATE 5: of or suitable to a criminal 6: concerned with crime or criminal law[.]
Webster's Third New International Dictionary 536 (1986) (examples of usage omitted). Peasley's claimed ambiguity is not supported by the dictionary. None of the definitions of criminal include intent as part of the adjective's meaning. To the contrary, the dictionary gives the suggestion "criminal carelessness" as an example under the first definition.
Most of the definitions for criminal refer the reader to the noun, "crime," so the definition of crime is relevant to the analysis.
crime ... 1a: ... an offense against public law (as a misdemeanor, felony, or act of treason) providing a penalty against the offender but not including a petty violation of municipal regulation ... b: an offense against the social order or a violation of the mores that is dealt with by community action rather than by an individual or kinship group 2 [obsolete] ... 3a: a gross violation of lawdistinguished from misdemeanor, trespass b: a grave or aggravated offense against or departure from moral rectitude 4: criminal activity: conduct in violation of the law 5a: an evil act:
*1248 SIN: a violation of divine law; esp: a grievous sin b: sinful conduct: WRONGDOING 6: something reprehensible, foolish, indiscreet, or disgraceful ... [.]
Webster's at 536 (examples of usage omitted). The third and fifth definitions offer more restrictive uses than the other definitions, suggesting the word crime could be used to indicate only serious wrongful acts. Even those restrictive definitions do not include intent as a necessary component. The dictionary fails to support Peasley's claim that the phrase criminal acts could be read as denoting only intentional criminal acts.
Peasley supports his argument by citing Van Riper v. Constitutional Gov't League, 1 Wash.2d 635, 96 P.2d 588 (1939). Van Riper concerned a death benefit certificate which a wife sought to enforce after her husband died in a car accident. The certificate provided the payment of benefits would be
incontestable and absolutely free from any conditions as to residence, travel, place or manner of death, except suicide or death due to acts committed in criminal violation of law, including picketing, or the use of intoxicating liquor or narcotics.
Van Riper, 1 Wash.2d at 637-38, 96 P.2d 588. The husband's death was caused by his own negligent drivingdriving which, the court found, violated numerous traffic laws and constituted a criminal misdemeanor. Van Riper, 1 Wash.2d at 638, 96 P.2d 588. The defendant argued it was excused from paying benefits on the certificate because the decedent's death was caused by his criminal driving. The court disagreed.
In analyzing the exclusion, Van Riper first looked to the phrase, "violation of law," and cited numerous cases from other jurisdictions where traffic violations qualified as violations of law. Van Riper, 1 Wash.2d at 639, 96 P.2d 588. The court found the adjective "criminal" worked to modify the violation of law phrase, thereby creating a new phrase that was more restrictive. Van Riper, 1 Wash.2d at 640, 96 P.2d 588. After quoting multiple definitions of criminal, the court declared the layperson would read the phrase "criminal violation of law" as signifying acts done "with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property." Van Riper, 1 Wash.2d at 642, 96 P.2d 588. Negligent driving did not trigger the exclusion.
Van Riper's holding fails to support Peasley's reading of the Allstate exclusion in this case. Van Riper's analysis was context specific, and it is not controlling on how this court interprets the use of the word criminal in the context of Allstate's exclusionary clause. More importantly, Van Riper's holding did not rest upon the intentional/unintentional distinction as argued by Peasley. Rather, the court's holding rested upon a distinction between serious crimes and nonserious crimes. The court held a traffic violation, although a misdemeanor, was not a serious crime. Other jurisdictions have cited Van Riper as standing for this exact rule of law. See, e.g., Sledge v. Continental Casualty Co., 639 So.2d 805, 813 (La.Ct.App.1994) (citing Van Riper for the rule: "`violation of law' exclusion in life insurance policy applied only to criminal acts of a serious nature"); see also Trevathan v. Mutual Life Ins. Co., 166 Or. 515, 113 P.2d 621, 625 (1941). This holding is still current, reflected by the fact that most traffic offenses are no longer part of the criminal code. See RCW 46.63.020. Van Riper fails to support Peasley's argument that the adjective "criminal" denotes intentional criminal acts.
As discussed above, none of the definitions for crime or criminal include intent as a necessary element. The more restrictive, third definition of crime in Webster's Dictionary focuses on serious violations of law, but seriousness does not equate intent, and Peasley has not urged this court to restrict Allstate's criminal acts exclusion to serious crimes.
Even if we did restrict the exclusion to serious crimes, a reading supported by Van Riper, the exclusion would still encompass the criminal act to which Peasley pleaded guilty. Reckless endangerment in the second degree is defined as reckless conduct "which creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.050(1). A reckless act creating a substantial risk of death or serious injury is undeniably a serious act and a serious crime. *1249 Reading Allstate's criminal acts exclusion to encompass Peasley's criminal act is consistent with Van Riper.
Peasley's claimed ambiguity does not exist. As used in Allstate's exclusionary clause, the phrase "criminal acts" does not distinguish between intentional and unintentional crimes. The language is unambiguous, and it clearly encompasses Peasley's criminal act of reckless endangerment. This court must enforce the Policy as written.
Reading "criminal acts" as including unintentional crimes is supported by the rule of construction which states a policy should be construed so as to give effect to each provision. Kish v. Insurance Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994). The exclusionary clause first excludes injuries which result from the "intentional ... acts of an insured...." This clause explicitly encompasses all intentional acts, whether they are criminal or not. If we restricted the meaning of "criminal acts" to just intentional criminal acts, we would thereby render the "criminal acts" phrase meaningless and superfluous since other language in the exclusionary clause already encompasses all intentional acts. See Allstate, 80 Wash.App. at 567, 910 P.2d 483.
Finally, our reading of the phrase "criminal acts" is supported by nearly every jurisdiction in our country which has examined that phrase. See, e.g., Allstate Ins. Co. v. Brown, 16 F.3d 222 (7th Cir.1994) (Allstate's criminal acts exclusion clause encompasses criminal recklessness); Allstate Ins. Co. v. Burrough, 914 F.Supp. 308, 312 (W.D.Ark. 1996) (the clause "includes all criminal acts, no matter what the mental state required for their commission"); Hooper v. Allstate Ins. Co., 571 So.2d 1001, 1003 (Ala.1990); Allstate Ins. Co. v. Schmitt, 238 N.J.Super. 619, 570 A.2d 488, 492 ("words `criminal act' are not modified by any descriptive culpability requirement"), cert. denied, 122 N.J. 395, 585 A.2d 394 (1990); Steinke v. Allstate Ins. Co., 86 Ohio App.3d 798, 621 N.E.2d 1275, 1279 (disorderly conduct, a crime with recklessness as an element, triggered the exclusionary clause), review denied, 67 Ohio St.3d 1423, 616 N.E.2d 506 (1993); Allstate Ins. Co. v. Sowers, 97 Or.App. 658, 776 P.2d 1322, 1323 (1989) (insured's resisting arrest fit the criminal acts exclusion despite insured's lack of intent to injure the officer). Contra Young v. Brown, 658 So.2d 750, 753 (La.Ct.App.) (refusing to apply Allstate's criminal acts exclusion to a crime of negligent injuring because losses "resulting from negligent, non-intentional conduct are precisely the losses a liability policy buyer expects to insure against"), cert. denied, 662 So.2d 1 (1995).

II
Peasley also attacks the phrase "injury which may reasonably be expected to result" as ambiguous. He argues the phrase could be read as requiring the insured's subjective expectation that the injury could result. Implicit in this argument is the position that Peasley did not subjectively expect Parker's injuries to result from his recklessness. The Court of Appeals applied an objective standard of expectation. Allstate, 80 Wash.App. at 569, 910 P.2d 483.
The exclusion applies to injuries "which may reasonably be expected to result" from certain acts of the insured. Although the phrase does not indicate whose reasonable expectations are at issue, the use of "reasonably" implies a removed observer, looking at the facts from a neutral, "reasonable" perspective. See Stinson v. Allstate Ins. Co., 212 Ga.App. 179, 441 S.E.2d 453, 454 ("The common understanding of the words `which may reasonably be expected to result from the intentional or criminal acts of an insured person' clearly creates a universal objective standard ...."), cert. denied, 212 Ga.App. 897 (1994).
Additionally, if we were to read "may reasonably be expected" as requiring a subjective standard, this would create another redundancy in the exclusion. The last phrase in the exclusion denies coverage for any injury which is "in fact intended by an insured person." This last phrase plainly encompasses a subjective standard. See Rodriguez v. Williams, 107 Wash.2d 381, 382, 729 P.2d 627 (1986) (the phrase, "expected or intended by the insured," denotes a subjective standard). Since a different phrase in the *1250 exclusion already addresses injuries subjectively intended by the insured, it would be redundant to read "may reasonably be expected" as setting a subjective standard. See Allstate Ins. Co. v. Brown, 16 F.3d 222 (7th Cir.1994) (using the same rationale to find an objective standard and listing other cases reaching the same result); Allstate Ins. Co. v. Burrough, 914 F.Supp. 308, 313 (W.D.Ark. 1996) (following Brown, 16 F.3d 222).
Peasley's conduct and the resulting injury to Parker clearly satisfy the objective standard of reasonable expectation. As stated by the Court of Appeals, Allstate, 80 Wash.App. at 569-70, 910 P.2d 483, the elements of reckless endangerment meet the objective standard. Conduct is reckless when one
knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.
RCW 9A.08.010(1)(c). By definition of the crime to which Peasley pleaded guilty, Parker's serious physical injuries were reasonably expected to result from Peasley's reckless act.

III
Peasley argues public policy is violated by allowing an insurer to exclude coverage for injuries resulting from non-intent criminal acts of the insured. Peasley admits the public policy concerns against coverage exclusions in automobile insurance cases have not been applied in the context of homeowner's insurance cases, but he claims the same policy considerations should apply. We rejected the same argument in State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 481, 687 P.2d 1139 (1984).
Emerson involved a homeowner's insurance policy that excluded liability coverage for injuries to family members of the insured. Emerson claimed the exclusion violated public policy by leaving victims without financial compensation. This court responded:
While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.
Absent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative. "The term `public policy,' ... embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." (Italics omitted.) LaPoint [v. Richards, 66 Wash.2d 585, 594-95, 403 P.2d 889 (1965)]. Such a showing has not been made here. We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful.
Emerson, 102 Wash.2d at 483, 687 P.2d 1139. See also Cary v. Allstate Ins. Co., 130 Wash.2d 335, 345, 922 P.2d 1335 (1996) (relying on Emerson to reject a public policy challenge against an insane acts exclusion in a homeowner's policy); American Home Assurance Co. v. Cohen, 124 Wash.2d 865, 871, 881 P.2d 1001 (1994) (relying on Emerson to reject a public policy challenge and uphold a psychologist's professional liability insurance policy insofar as it limited liability coverage for the insured's sexual misconduct).
Peasley has not shown how the public policy concerning coverage exclusions in homeowner insurance policies has changed in any way since Emerson. Absent that showing, stare decisis requires Emerson be followed. State v. Ray, 130 Wash.2d 673, 677-78, 926 P.2d 904 (1996).
DURHAM, C.J., and SMITH and TALMADGE, JJ., concur.
*1251 MADSEN, Justice, (concurring).
I agree that the homeowner's insurance policy exclusion at issue distinguishes between injury reasonably expected to result from an insured's intentional acts and those reasonably expected to result from criminal acts. The policy's plain language does not support Mr. Peasley's claims that the exclusion is ambiguous and that injury resulting from unintentional criminal acts is not excluded from coverage. Therefore, I agree with the majority that the criminal acts exclusion is not limited to intentional criminal acts.
However, I must disagree with the majority insofar as it suggests that any and all criminal acts are encompassed by the exclusion and insofar as it fails to follow the still sound analysis in Van Riper v. Constitutional Gov't League, 1 Wash.2d 635, 96 P.2d 588, 125 A.L.R. 1100 (1939). There, a death benefit certificate issued by a mutual benevolent corporation was at issue. The court in Van Riper first stated that although the certificate was not, strictly speaking, an insurance policy, it was similar in nature and "its provisions with reference to liability for death benefits are subject to the same rules as are applicable to analogous provisions in policies of insurance." Id. at 639, 96 P.2d 588 (citing treatises on insurance law). Then, applying the same rules of construction followed by the majority in this case, the court in Van Riper held that an exception to coverage in the certificate for death caused by "acts committed in criminal violation of the law" (emphasis omitted) excluded coverage only where death was caused by an act done "with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property." Id. at 640, 642, 96 P.2d 588.
Central to the court's analysis in Van Riper is the principle that the language of an insurance policy is to be construed in its plain, ordinary, usual, and popular sense. Id. at 640, 96 P.2d 588. The Allstate policy at issue here must be construed by the same standard, and be given "`a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 627, 881 P.2d 201 (1994) (quoting Queen City Farms, Inc. v. Central Nat'l Co., 126 Wash.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994)). Undefined terms are given their plain, ordinary, and popular meaning. Kish v. Insurance Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994).
The court in Van Riper examined the dictionary definitions of "crime" and "criminal," which gave popular meanings of the words, and said that "[i]n consulting such works, the layman would receive the impression, if he did not already have it, that the term `criminal' implies a wicked or heinous act." Van Riper, 1 Wash.2d at 641-42, 96 P.2d 588. The acts resulting in death in that case involved driving an automobile at excessive speed and failing to stop at a stop sign. The court reasoned:
To say that a layman, such as the registrant or the respondent, would apply the word "criminal" to the act of one who, under the circumstances here present, exceeded a speed limit or failed to stop before entering an arterial highway, is either to ignore the common usage of the term or else to imply that practically everyone who has ever driven an automobile is a criminal.
Id. at 642, 96 P.2d 588.
The sensible construction applied in Van Riper is just as sensible today. The policy at issue is a homeowner's policy. Reviewing just a few criminal statutes shows why the average purchaser would not think "criminal acts" means any and all criminal acts in the technical sense. For example, under RCW 36.43.040 "[a]ny person violating the provisions of any building code or any fire regulation lawfully adopted by any board of county commissioners shall be guilty of a misdemeanor." Under RCW 9.40.040 "[e]very person who shall operate or permit to be operated in dangerous proximity to any brush, grass or other inflammable material, any spark-emitting engine or boiler which is not equipped with a modern spark-arrester, in good condition, shall be guilty of a misdemeanor." Under RCW 9.03.020 it is a misdemeanor to permit an unused refrigerator to remain on the premises without the door *1252 removed or a portion of the latch mechanism removed. Under RCW 70.77.485 it is unlawful to possess fireworks in violation of RCW 70.77, and possession of less than one pound is a misdemeanor. Under a provision of the water code, RCW 90.03.400, it is a misdemeanor to use any water until after issuance of a permit to appropriate such water.
Thus, if injury resulting from any criminal act is excluded from coverage, injuries to a house guest falling on stairs with treads which are too shallowly built by the insured in violation of a building code will be excluded from coverage, injury to one burned in a fire caused by sparks from an engine without a proper spark arrester operated by an insured at home would be excluded from coverage, and an injury to a guest due to drowning in a hot tub or swimming pool where water was used prior to issuance of the proper permit to the insured under RCW 90.03.400 would be excluded from coverage. The average purchaser of insurance would no doubt be surprised to find that building stairs not according to code would be a criminal act barring coverage for his injured house guest under his homeowner's policy. As one court said when faced with identical language in an insurance policy:
Modern statutory and regulatory provisions govern most facets of human behavior and social interaction and are so extensive that liability seldom arises apart from some manner of illegal conduct.... Indeed, statutes have so covered the field that fault can seldom occur that the conduct involved is not also considered a crime. It is illegal, in some instances, to possess a firearm, speed in automobiles, drive under the influence of alcohol, and let your pet outside without a leash.
Young v. Brown, 658 So.2d 750, 754 (La.Ct. App.), writ denied, 662 So.2d 1 (1995).
In addition to my disagreement about what meaning the average purchaser of insurance would attribute to the "criminal acts" language, there is another reason why I do not believe that injury resulting from any and all criminal acts is excluded under this policy's language. "[W]hen a judicial construction is placed upon words or phrases prior to the issuance of a policy which uses those words and phrases, it is presumed that construction is intended by the parties." Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 91, 882 P.2d 703, 891 P.2d 718 (1994) (citing 2 George J. Couch, Insurance § 15:20, at 195-96 (2d ed. rev.vol. 1984)). Because the court treated the death benefit certificate in Van Riper as an insurance policy, I believe this principle applies in this case. Therefore, the court's 1939 construction of the nearly identical term "criminal violation of law" to mean a serious criminal act is presumed to be the construction intended by the parties here.
The remaining question is whether Mr. Peasley's conduct is a serious criminal act encompassed within the exclusion. The majority says that Mr. Peasley has failed to argue that the exclusion should be restricted to serious criminal acts, suggesting the issue is not before the court, but then says that even under Van Riper reckless endangerment in the second degree is a serious criminal act. First, because the court must interpret the policy as a matter of law, I do not agree that the court may consider only those interpretations advanced by the parties. Second, I believe the focus of the inquiry is not simply the statutory elements of the offense of which the insured has been convicted, but rather the plea and the insured's statement on plea of guilty. There is considerable authority that a guilty plea, as opposed to a conviction following a full-fledged trial, is not conclusive in a subsequent civil proceeding. See, e.g., Safeco Ins. Co. of Am. v. McGrath, 42 Wash.App. 58, 708 P.2d 657 (1985) (citing cases and holding specifically that Alford-type plea is not conclusive); Restatement (Second) of Judgments § 85 cmt. b (1980); but see, e.g., State Farm Fire & Cas. Co. v. Sallak, 140 Or.App. 89, 914 P.2d 697, review denied, 324 Or. 18, 920 P.2d 551 (1996) (citing cases). There is, however, no question that a guilty plea may be admissible as an admission. See McGrath, 42 Wash.App. at 62, 708 P.2d 657; see also ER 801(d)(2); 5 Karl B. Tegland, Washington Practice, Evidence § 139, at 503-04 & 504 n. 9 (discussing ER 410 and explaining the rule does not preclude admissibility of statements made in connection with a guilty plea that is *1253 accepted and not withdrawn). Moreover, "[a] defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense" although this is a matter of estoppel and not issue preclusion. Restatement (Second) of Judgments § 85 cmt. b.
In Washington, the court shall not accept a guilty plea unless it is made voluntarily, competently, with an understanding of the nature of the charge and with an understanding of the consequences of the plea. Further, "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." CrR 4.2(d). Here, Mr. Peasley said in his statement on plea of guilty that "he recklessly discharged a firearm in a manner which caused a substantial risk of bodily harm or death to another person, Ardis Parker." Clerk's Papers at 60. Mr. Peasley's admission contains facts which an average purchaser of insurance would view as serious criminal conduct. Thus, it is his admission, not the mere fact of conviction, which places his conduct within the scope of the criminal acts exclusion.
I concur in the result reached by the majority.
GUY and ALEXANDER, JJ., concur.
JOHNSON, Justice, (dissenting).
I agree with Justice Madsen's conclusion that our holding in Van Riper v. Constitutional Gov't League, 1 Wash.2d 635, 96 P.2d 588, 125 A.L.R. 1100 (1939) is applicable in this case. However, I disagree with Justice Madsen's application of Van Riper and would reverse the judgment of the trial court and Court of Appeals.
In Van Riper we defined the word "criminal," as used in an exclusion to a death benefit certificate, to mean "an act done with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property." Van Riper, 1 Wash.2d at 642, 96 P.2d 588. In that case, Mr. Van Riper was driving a car with his wife and daughters as passengers. The car crashed when he ran a stop sign while speeding, and collided with a car on the intersecting road. Van Riper died of injuries he sustained in the crash and his heirs were denied benefits under the "criminal violation of law" exclusion in his death benefit certificate. Van Riper, 1 Wash.2d at 638, 96 P.2d 588. After defining "criminal" by looking at three commonly used dictionaries, this court held that a layman would not apply the term "criminal" (as defined above) to Van Riper's actions. Van Riper, 1 Wash.2d at 641-42, 96 P.2d 588. Thus, the test under Van Riper is whether a layman, or an average purchaser of insurance, would find the acts of an insured as being done with "malicious intent, from evil nature, or with a wrongful disposition to harm." Van Riper, 1 Wash.2d at 642, 96 P.2d 588.
Applying that test here, we must determine whether an average purchaser of insurance would find Mr. Peasley's admission of "recklessly discharg[ing] a firearm in a manner which caused a substantial risk of bodily harm or death" (Clerk's Papers at 60) was an act done with malicious intent, from evil nature, or with a wrongful disposition to harm. As a matter of law, I would hold Mr. Peasley's admission of criminal recklessness does not amount to an act which an average purchaser of insurance would view as one made with malicious intent, from evil nature, or with a wrongful disposition to harm. The crime to which Peasley pled guilty was reckless endangerment in the second degree, defined in RCW 9A.36.050(2) as a gross misdemeanor hardly an act evidencing malice, an evil nature, or a wrongful disposition to harm. Nor does reckless endangerment in the second degree fall within any of our statutory definitions of "serious offense" or "most serious offense." See RCW 9.41.010(12) (defining "serious offense" in the Uniform Firearms Act) and RCW 9.94A.030(23) (defining "most serious offense" in the Sentencing Reform Act of 1981(SRA)).[1] Here, a guest in the home of *1254 Mr. Peasley was shot in the stomach. Both the victim and Peasley contend the shooting was accidental. Based on those scant facts and Peasley's admission, I cannot agree that the average purchaser of insurance would label his acts as "criminal" as defined in Van Riper. Therefore, I would reverse the order of summary judgment and remand for trial.
SANDERS, J., concurs.
NOTES
[1] Nor would reckless endangerment in the second degree constitute a "serious violent offense" or "violent offense" under the SRA. See RCW 9.94A.030(31), (38).