37 P.3d 1269 (2002)
Lawrence Edward SPRATT and Jane Doe Spratt, a marital community, d/b/a Big Foot Pub Eatery; and Ida Jane Burrows, individually, and as a Personal Representative of the Estate of Brandon James John Burrows, Deceased; Richard Burrows; and Jacqueline G. Newcomb, as Guardian ad Litem for Steven C. Burrows and Sarah M. Burrows, Respondents,
v.
CRUSADER INSURANCE COMPANY, a California corporation, Appellant.
No. 19861-8-III.
Court of Appeals of Washington, Division 3, Panel Seven.
January 15, 2002.
*1271 James Paul Wagner, J. William Ashbaugh, Stafford, Frey, Cooper, Seattle, David K. Dorenfield, Snyder, Dorenfield & Tannenbaum, Calabasas, CA, for Appellant.
Dennis C. Cronin, Hearrean & Cronin, Richard W. Kuhling, J. Elizabeth Brown, Paine, Hamblen, Coffin, Brooke & Miller, Spokane, Kristopher I. Tefft, Building Industry Ass'n of Wash., Olympia, for Respondents.
Donald J. Verfurth, Carney Badley, Smith & Spellman, Seattle, for Amicus Curiae.
*1270 SCHULTHEIS, J.
Big Foot Pub & Eatery owner Lawrence Spratt obtained liquor liability coverage from Crusader Insurance Company. One of the provisions in the insurance policy limited recovery to $1 million for all injuries sustained "as the result of the selling, serving or furnishing of any alcoholic beverage to any one person." Clerk's Papers (CP) at 39. Ida Jean Burrows, injured by an inebriated Big Foot patron, sought a declaration that Big Foot's liquor liability coverage provides a limit of $1 million for each individual serving of an alcoholic beverage. The trial court granted summary judgment to Ms. Burrows. On appeal, Crusader contends the unambiguous language of the policy provides a single $1 million limit for injuries caused by a customer who was served alcohol. We find that only Crusader's interpretation of the policy language is reasonable, and reverse.

FACTS
Big Foot's Crusader policy provides an "Aggregate Limit" of $2 million "for all `injury' as the result of the selling, serving or furnishing of alcoholic beverages." CP at 39. Subject to that aggregate limit, the policy also has an "Each Common Cause Limit" described as "the most we will pay for all `injury' sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person."[1] CP at 39.
In June 1998, Ms. Burrows and her children were injured when an inebriated Big Foot patron crashed into her car. One of the children died. Ms. Burrows, the estate of her dead son, and her two surviving children filed a negligence action against Mr. Spratt and his marital community. In that action, Ms. Burrows claimed that the inebriated driver, Ryan Quaale, was served at least two drinks at Big Foot when he was obviously intoxicated. Mr. Spratt then joined with the Burrows in filing a complaint for declaratory judgment against Crusader, seeking a court order declaring that the maximum liability coverage under the Crusader policy is a total of $2 million, $1 million for each of two servings of alcoholic beverages allegedly sold to Mr. Ryan.
Both parties filed summary judgment motions. In support of their motion, Mr. Spratt and the Burrows (collectively, Spratt) submitted an affidavit by a Gonzaga University English professor, Michael Herzog, and a declaration by Mr. Spratt. Crusader moved to strike these statements, arguing that the interpretation of contract language is a matter *1272 of law, to be determined by looking at how the average purchaser would understand it. Ruling that the phrase "any alcoholic beverage" is ambiguous and could be interpreted as referring to each act of serving an alcoholic beverage, the trial court granted summary judgment to Spratt. CP at 117. The court also denied Crusader's motions to strike the statements of Dr. Herzog and Mr. Spratt. Crusader now appeals the summary judgment and the order denying the motions to strike.

EXTRINSIC EVIDENCE AND THE INTERPRETATION OF CONTRACT LANGUAGE
Crusader first contends the trial court erred in considering the testimony of Dr. Herzog and Mr. Spratt. Dr. Herzog's affidavit states that he reviewed the language of the aggregate limit and the each common cause limit and that he was of the opinion that the phrase "any alcoholic beverage" was ambiguous. CP at 13. He stated that beverage could mean a liquid for drinking or a unit of liquid. In his opinion, the "any" compounded the ambiguity because of its wide range of meanings, from "one of more than two" to "an unlimited number." CP at 13. Mr. Spratt's declaration states that he understood the each common cause limit to mean that if "customer `A' was served alcohol a second time and caused a secondary damage then the coverage would be two million even if the events occurred the same day and time." CP at 63.
Insurance policies are construed as contracts, meaning that they are interpreted as a matter of law. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 423-24, 932 P.2d 1244 (1997). The language of an insurance contract is interpreted the way it would be understood by the average insurance purchaser. State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 480, 687 P.2d 1139 (1984). Undefined terms are given their ordinary and common meaning, not their technical, legal meaning. Peasley, 131 Wash.2d at 424, 932 P.2d 1244 (citing Kish v. Ins. Co. of N. Am., 125 Wash.2d 164, 170, 883 P.2d 308 (1994)). If the language is clear and unambiguous, it must be enforced as written. Wash. Pub. Util. Districts' Utils. Sys. v. Pub. Util. Dist. No. 1, 112 Wash.2d 1, 10, 771 P.2d 701 (1989). However, if the language on its face is fairly susceptible to two different but reasonable interpretations, an ambiguity exists, and the interpretation most favorable to the insured will be applied. Peasley, 131 Wash.2d at 425, 932 P.2d 1244.
When a clause in an insurance policy is ambiguous, the parties may present extrinsic evidence of their intent in order to resolve the ambiguity. Panorama Village Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co., 144 Wash.2d 130, 137, 26 P.3d 910 (2001). This extrinsic evidence, however, is admitted only to aid in the interpretation of the words employed, not to show intention independent of the instrument. Lynott v. Nat'l Union Fire Ins. Co., 123 Wash.2d 678, 683-84, 871 P.2d 146 (1994) (citing Berg v. Hudesman, 115 Wash.2d 657, 669, 801 P.2d 222 (1990)). Because the key is what the parties negotiated for, parol evidence is admissible only if it "`goes no further than to show the situation of the parties and the circumstances under which the instrument was executed....'" Berg, 115 Wash.2d at 669, 801 P.2d 222 (quoting J.W. Seavey Hop Corp. v. Pollock, 20 Wash.2d 337, 348-49, 147 P.2d 310 (1944)), quoted in Lynott, 123 Wash.2d at 684, 871 P.2d 146. Usually the terms of insurance policies are not negotiated. Lynott, 123 Wash.2d at 684, 871 P.2d 146. Where there were actual negotiations, however, extrinsic evidence is admissible to show the parties' mutual intentions as manifested in the terms. Id; Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 629, 881 P.2d 201 (1994).
In this case, the record does not show that the parties negotiated the terms of the each common cause limit provision. Consequently, extrinsic evidence is not admissible unless it shows the situation of the parties or the circumstances under which the policy was executed. Lynott, 123 Wash.2d at 684, 871 P.2d 146; Berg, 115 Wash.2d at 669, 801 P.2d 222. Neither the affidavit of Dr. Herzog nor the declaration of Mr. Spratt meets that test. Further, Mr. Spratt's declaration merely shows his unilateral understanding of the terms, and is not relevant to the intention of the parties at the time the *1273 policy was executed. Lynott, 123 Wash.2d at 684, 871 P.2d 146.
Spratt contends Dr. Herzog's affidavit should be considered a stand-in for a dictionary of the English language. Washington courts will frequently consult a dictionary to determine the common meaning of words in an insurance contract. See, e.g., Peasley, 131 Wash.2d at 425-26, 932 P.2d 1244. But an opinion of an English language expert is not a dictionary definition. As Crusader notes, the average person is not likely to consult an English professor when purchasing an insurance policy. More important, it is the role of the trial court to determine how the average person would understand the policy. The specialized knowledge of an expert is not relevant to that inquiry. Emerson, 102 Wash.2d at 480, 687 P.2d 1139.
Both the affidavit of Dr. Herzog and the declaration of Mr. Spratt should have been excluded as irrelevant, but their effect on the trial court's decision was probably negligible. The trial court stated that it would not give Dr. Herzog's opinion "a great deal of weight," and admitted both statements only because they provided "some insight into a common understanding of everyday terms[.]" Report of Proceedings (Nov. 29, 2000) at 6-7. In its oral ruling, the court did not refer to these statements. Because the court apparently relied more on its own interpretation of the average person's understanding of the policy's terms, reversal is not required for this error in admission. Thomas v. French, 99 Wash.2d 95, 104, 659 P.2d 1097 (1983) (an error without prejudice is not grounds for reversal and will not be considered prejudicial unless it can be presumed to affect the outcome of the trial).

INTERPRETATION OF THE EACH COMMON CAUSE LIMIT
The ultimate question before this court is whether the each common cause limit provision is ambiguous, and if so, whether the trial court erred in adopting Spratt's interpretation. We ask not whether there are two or more possible interpretations, but whether there are two or more reasonable interpretations of the language on its face. Peasley, 131 Wash.2d at 424, 932 P.2d 1244. In making this determination, we afford the language of the policy the fair and sensible construction that would be given to the contract by an average person purchasing insurance. Panorama Village, 144 Wash.2d at 139, 26 P.3d 910.
One reliable method to determine the ordinary meaning of an undefined term is to consult a standard English language dictionary. Id. (citing Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990)). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 210 (1993) defines "beverage" as a "liquid for drinking; esp: such liquid other than water ... [usually] prepared ... before being consumed[.]" Contrary to Spratt's and the trial court's understanding, the dictionary does not include in the definition of beverage a unit of measure. "Any" is defined as "one indifferently out of more than two: one or some indiscriminately of whatever kind," and as "one, some, or all indiscriminately of whatever quantity ... one or more: not none ... ALL[.]" WEBSTER'S, supra, at 97. Applying the more common dictionary meanings of the words "any" and "beverage," we get: one or some of whatever kind or quantity of a liquid beverage. This is a reasonable interpretation of the phrase that corresponds with the interpretation urged by Crusader. When Crusader intended to refer to one and one only, it did so by stating "any one," as in "any one person." CP at 39. Spratt contends Crusader would have used the plural form of beverageas it did in the aggregate limitif it intended to mean more than one. But the plural form would exclude by implication the singular, leaving open the possibility that Crusader limited recovery to injuries caused only by multiple beverages served to any one person.
Spratt's interpretationthat the each common cause limitation is applied to each beverage served to any one personis not reasonable in the context of the policy or of the common definitions of the terms. As noted above, the claimed ambiguity is not supported by the definitions in the dictionary. "Any" does not mean "each," and "beverage" does not mean "serving of a liquid" or "unit of measure of a liquid." Because only Crusader's interpretation of the each common *1274 cause limit is reasonable, the trial court erred in adopting Spratt's interpretation. Accordingly, the trial court erred as a matter of law in granting summary judgment to Spratt, rather than to Crusader.
Reversed; the trial court is directed to grant Crusader's motion for summary judgment.
WE CONCUR: KURTZ, C.J., and KATO, J.
NOTES
[1] The insurance coverage abstract from Mr. Spratt's policy describes the liquor liability coverage as $1 million "Per Occurrence." CP at 42. Unlike most insurance policies, however, the term occurrence is not defined or used anywhere else in the body of the policy. Apparently the "Each Common Cause Limit" serves to define what is commonly regarded as an occurrence.